Matthew J. Preusch (Cal. Bar No. 298144)
mpreusch@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1129 State Street, Suite 8
Santa Barbara, California 93101
Tel.: (805) 456-1496 / Fax (805) 456-1497

Cari Campen Laufenberg, *pro hac vice forthcoming*
claufenberg@kellerrohrback.com
Gretchen Freeman Cappio, *pro hac vice forthcoming*
gcappio@kellerrohrback.com
Amy N. L. Hanson, *pro hac vice forthcoming*
ahanson@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Ave., Suite 3200
Seattle, Washington 98101
Tel: (206) 623-1900 / Fax: (206) 623-3384

*Attorneys for Plaintiff Martha Schroeder*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA SCHROEDER, individually and on behalf of others similarly situated, ) ) ) | CASE NO. |
| Plaintiff, ) | CLASS ACTION COMPLAINT |
| v. ) ) | JURY TRIAL DEMANDED |
| EXPERIAN INFORMATION SOLUTIONS, INC., ) ) ) | |
| Defendant. ) | |

## I.   INTRODUCTION

1.     Plaintiff Martha Schroeder ("Plaintiff" or "Plaintiff Schroeder") files

this Class Action Complaint ("Complaint") on behalf of herself and all others

similarly situated, against Experian Information Solutions, Inc. ("Defendant" or "Experian"), and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief based upon, *inter alia,* investigation conducted by her attorneys. In compliance with L.R. 8-1, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) as further set forth below.

## II.   NATURE OF THE ACTION

2.     On October 1, 2015, Experian announced that servers housing the sensitive and confidential data of approximately 15 million consumers who had applied for T-Mobile's cellular telephone and data services between September 1, 2013 and September 16, 2015 had been breached by hackers (the "Data Breach"). The stolen data includes consumers' most sensitive, non-public personally identifying information ("PII") including full names, home addresses, birthdates, Social Security numbers, assessments of consumer payment history and consumer credit information as well as other personal information which T-Mobile provided to Experian.[1]

3.     Shortly after the Data Breach, PII matching the types of data stolen from Experian servers appeared for illicit sale and further unauthorized use on black market websites known as the "dark web."

---

[1] *Overview: Unauthorized Acquisition of Personal Information,* Experian, http://www.experian.com/data-breach/t-mobilefacts.html?intcmp=tmdb (last visited Oct. 26, 2015).

4.      Experian runs credit inquiries for potential creditors around the world in order to assess the credit worthiness of the creditor's potential customers. As a credit reporting agency, Experian has a responsibility to assemble and evaluate consumer credit information and other information on consumers with "fairness, impartiality, and a respect to the consumer's right to privacy" pursuant to the Fair Credit Reporting Act Under 15 U.S.C. § 1681, et seq.

5.      Experian professes its mission is to help "consumers acquire, build, and improve credit by managing their credit histories." However, here, Experian failed to maintain reasonable and adequate security measures to protect consumers' PII from unauthorized access and disclosure.  This failure allowed cybercriminals to perpetrate this wide-reaching breach.

6.      Experian also touts its ability to implement continually improved security measures and prevent identity theft to consumers.[2] However, here, it failed to implement these measures on its own servers even in the wake of several previous data breaches at Experian and its sister companies which likewise compromised customer PII.

---

[2] *See* Jordan Robertson, *The Changes Coming to Credit Agencies Won't Stop Hackers: Experian, Equifax, and TransUnion are Prime Targets for Hackers*, Bloomberg Business (Mar. 9, 2015), http://www.bloomberg.com/news/articles/ 2015-03-09/the-changes-coming-to-credit-agencies-won-t-stop-hackers (last visited Oct. 26, 2015); *see also Identity Theft Protection,* Experian, http://www.experian.com/consumer-products/identity-theft-and-credit-protection.html (last visited Oct. 26, 2015); *Breach Prevention,* Experian, http://www.experian.com/blogs/data-breach/category/breach-prevention/ (last visited Oct. 26, 2015).

7.     In short, Experian missed numerous opportunities to prevent, detect, end, or limit the scope of the Data Breach, thus, allowing thieves to steal and globally publish the customer PII entrusted with Experian – to the life-long detriment of Plaintiff and similarly situated consumers.

8.     By offering consumer victims two years of its own identity protection services without charge, Experian has effectively acknowledged that the Data Breach has put members of the Class at a heightened risk of identity theft and identity fraud. However, in so doing, Experian asks the very individuals it has failed to protect to once again place their faith in Experian's ability to protect their personal information by providing even more personal information. Worse still, Experian has used the Data Breach as a marketing opportunity – hawking its identity protection services to consumers who will need such protection for not just the next two years, but likely for the remainder of their lives.

9.     Adding insult to injury, the free identity protection services Experian is offering victims of the Data Breach does not protect consumers from identity theft or identity fraud with regard to the unauthorized use of their stolen PII. Instead, the service monitors consumers' credit reports – only providing alerts as to the unauthorized use of PII after the fact.[3] Thus, Plaintiff and Class Members are left holding the bag to expend the time and resources to put in place mechanisms,

_____

[3]Krebs, *Experian Breach Affects 15 Million Consumers*, KrebsOnSecurity (Oct. 2, 2015), http://krebsonsecurity.com/2015/10/experian-breach-affects-15-million-consumers/#more-32477 (last visited Oct. 26, 2015).

like placing quarterly fraud alerts with one or more credit reporting agencies, freezing their credit at each of the three major credit reporting agencies, and/or purchasing other services, which might actually protect them from becoming victims of identity theft or identity fraud.

10.    Moreover, consumers that have taken proactive steps and signed up for Experian's identity protection services will still remain vulnerable to identity theft and identity fraud after the two years of free identity protection service provided by Experian ends. There is no basis to believe that Class Members' PII will not be publicly available to anyone with an internet connection in perpetuity. Unlike credit card and financial account numbers, much of the compromised information is difficult, if not impossible to change: consumers cannot alter certain types of PII – e.g., dates of birth, mother's maiden name – and altering still other forms of PII, namely Social Security numbers, comes with serious impediments. As a direct result of Experian's failure to prevent the Data Breach, Class Members are experiencing and will continue to experience an increased risk of identity theft and identity fraud for the indefinite future.

11.    Further, this harm has been exacerbated by Experian's delayed notification of the Data Breach. Experian waited more than two weeks after September 15, 2015 to publicly disclose the Data Breach on October 1, 2015. And, according to Experian it is likely to take up to two more months to provide notice to affected consumers.

### III.   JURISDICTION

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C.

§ 1332(d) because at least one member of both proposed Classes is a citizen of a

different state than Defendant Experian, the amount in controversy exceeds

$5,000,000, exclusive of interest and costs, and the proposed Classes consist of

more than 100 Class Members.

13.     This Court has personal jurisdiction over the Defendant because

Defendant is licensed to do business in California, has a principal place of business

in California and has sufficient minimum contacts with California.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because

Defendant is located and regularly conducts business in this district and a

substantial part of the events or omissions giving rise to Plaintiff's claims occurred

in this district.

### IV.   PARTIES

**A.     Plaintiff Martha Schroeder**

15.     Plaintiff Martha Schroeder has been a T-Mobile cellular telephone

and data services customer since September 12, 2015 and currently resides in the

State of Washington.

16.     Before T-Mobile provided Plaintiff Schroeder with cellular telephone

and data services, T-Mobile required Plaintiff Schroeder to provide T-Mobile with

PII, including Plaintiff Schroeder's full name, home address, home telephone

number, credit and bank debit card numbers, Social Security number, and birthdate.

17.     Plaintiff provided her PII to T-Mobile as required, expecting that it would be reasonably safeguarded to maintain its confidentiality.

18.     On or about September 18, 2015, Plaintiff learned that a credit inquiry had been made on her credit record in conjunction with her application for cellular telephone and data services from T-Mobile.

19.     To date, neither Experian nor T-Mobile have notified Plaintiff of the Data Breach.

20.     Plaintiff Schroeder independently learned of the Data Breach on or about October 1, 2015.

21.     Due to the silence of Experian and T-Mobile, Plaintiff Schroeder spent 3-5 hours attempting to confirm whether her PII was compromised in the Data Breach.

22.     As part of this effort, on or about October 3, 2015, Plaintiff drove to a T-Mobile retail store to obtain confirmation as to whether her PII was compromised as a result of the Data Breach. An employee at the T-Mobile retail store was unable to provide her with confirmation; however, the T-Mobile retail store employee did provide information about how she could obtain identity protection services through Experian's ProtectMyID®.

23.     Based upon the information she has gathered about the Data Breach, and the fact that a credit inquiry had been made in conjunction with her application for cellular telephone and data services from T-Mobile, Plaintiff has a good faith basis to believe that her PII was compromised in the Data Breach.

24.     Based upon this belief, Plaintiff Schroeder enrolled in Experian's ProtectMyID® identity protection services on or about October 4, 2015.

25.     Plaintiff Schroeder has continued to spend additional time attempting to contain the impact of the Data Breach on her identity. In addition to applying for Experian's ProtectMyID® identity protection services, Plaintiff also contacted her bank and informed them that her PII was compromised in the Data Breach. On October 24, 2015, she contacted the three major credit bureaus and instructed them to freeze her credit record. She is currently investigating ways to further protect her identity, finances and credit.

26.     If Experian had promptly notified Plaintiff that her PII had been compromised in the Data Breach, Plaintiff would have been able to expedite the process of protecting herself from the potential risk of identity theft and identity fraud in the wake of the Data Breach.

27.     Going forward, Plaintiff Schroder anticipates spending considerable time and money for the rest of her life to contain the impact of the Data Breach, including diligently monitoring her accounts and credit report for unauthorized use of her personal information.

**B.     Defendant Experian Information Solutions, Inc.**

28.     Defendant Experian Information Solutions, Inc. is a corporation organized under the laws of Ohio, with its principle place of business located in Costa Mesa, Orange County, California.

29.     Experian's parent corporation, Experian plc, is headquartered in Dublin, Ireland, and is the world's largest information services company, providing data and analytical tools to help businesses manage credit risk, prevent fraud, target marketing offers and automate decision-making.

30.     Defendant Experian is one of three major credit bureaus that conduct credit checks on individuals throughout the United States and maintains data on more than 200 million consumers in the United States.

31.     Pursuant to a contract with T-Mobile, Experian provides T-Mobile with credit scores and creditor payment history for applicants of T-Mobile's cellular telephone and data services. T-Mobile uses this information to determine the creditworthiness of these applicants.

32.     Experian maintains a historical record of the applicant data used by T-Mobile to make these credit decisions. The data is required to be maintained for a minimum period of 25 months under applicable credit laws.

## V.   FACTUAL ALLEGATIONS

**A.   The Data Breach**

33.     Upon information and belief, on or about September 15, 2015, Experian discovered that data for approximately 15 million T-Mobile cellular phone and data service applicants had been compromised in a massive hack of Experian's servers.

34.     The data reported to have been hacked includes sensitive and confidential personal information including names, addresses, dates of birth, Social Security numbers, and driver's license and passport numbers of consumers who applied for T-Mobile cellular phone and data services between September 1, 2013 and September 16, 2015.

35.     On October 1, 2015, Experian and T-Mobile stated publicly that Experian servers housing T-Mobile cellular phone and data service applicant data had been hacked and that the hackers had accessed the data.

36.     On its website, T-Mobile acknowledges that Experian took "full responsibility for the theft of data from its server"[4] and notes that Experian is offering two years of free credit monitoring and identity resolution services

_____

[4]*Additional T-Mobile Specific FAQs*, T-Mobile, http://www.t-mobile.com/ landing/experian-data-breach-faq.html (last visited Oct. 26, 2015).

through Experian's own ProtectMyID® to anyone concerned that they have been impacted.[5]

37.     Unfortunately, in order to receive this free protection, affected consumers are asked to place their trust in the very entity who failed to safeguard their PII and to potentially provide additional PII.

38.     Additionally, Experian's ProtectMyID® service is not actually designed to prevent identity theft. At best, it notifies the customer after a fraudulent incident has occurred and may help the customer to work with credit bureaus to repair his or her credit report after the fact.

39.     Importantly, while Defendant Experian was aware of the breach as of at least September 15, 2015, Experian waited more than two weeks to publicly disclose the Data Breach. Moreover, Experian's notification by letter is not scheduled to reach affected consumers until November 30, 2015 – a full two and one-half months after the discovery of the Data Breach.[6]

**B.     Experian Touted Its Data Security Knowledge and Commitment to Securing Consumer Information**

40.     Experian's Privacy Policy acknowledges that it will safeguard the information it collects, maintains, and utilizes:

---

[5] John Legere, *Letter to Consumers from CEO,* T-Mobile (Oct. 1, 2015), http://www.tmobile.com/landing/experian-data-breach (last visited Oct. 26, 2015).

[6] *Overview: Unauthorized Acquisition of Personal Information,* Experian, http://www.experian.com/data-breach/t-mobilefacts.html?intcmp=tmdb (last visited Oct. 26, 2015).

Experian considers itself a steward of the information it collects, maintains, and utilizes. Our responsibility is to ensure the security of the information in our care and to maintain the privacy of consumers through appropriate, responsible use….Today our business clients' needs and consumer' expectations are constantly changing, and technology is constantly evolving. Our approach to privacy, rooted in these Global Information Values, enables Experian to respond to those constantly changing needs and expectations and provides the flexibility to implement new processes and policies to resolve information issues in this dynamic environment.[7]

41.     In March of 2015, Experian spokesman Gerry Tschopp sought to assure the public of its Privacy Policy implementation, stating: "Data security and protection are a top priority, and we constantly invest in and evolve our systems to protect the integrity of our systems, our data, and our platforms."[8]

42.     Experian also promoted its data security knowledge and data breach prevention, mitigation, notification, and identity theft resolution devices on its website.[9]

43.     In practice, however, Experian did not act as a steward of the applicant and customer information that it collected from T-Mobile. Hackers were undisputedly able to hack Experian's servers containing T-Mobile applicant and

---

[7]*Our Approach to Privacy*, Experian, https://www.experian.com/privacy/ (last visited Oct. 26, 2015).

[8] Robertson, *The Changes Coming to Credit Agencies Won't Stop Hackers: Experian, Equifax, and TransUnion are Prime Targets for Hackers*, Bloomberg Business (Mar. 9, 2015), http://www.bloomberg.com/news/articles/2015-03-09/the-changes-coming-to-credit-agencies-won-t-stop-hackers (last visited Oct. 26, 2015).

[9] *Data Breach Resolution*, Experian, http://www.experian.com/blogs/data-breach/ (last visited Oct. 26, 2015).

customer data and may have successfully unencrypted this information for further unauthorized use.

## C.   Experian's Prior Data Breaches

44.    In 2012, Experian suffered a massive breach in connection with its purchase of a national public records database company.[10] An investigation by the U.S. Secret Service and at least four states uncovered that this subsidiary company sold personal identification data to an underground ID theft service, and continued to do so for up to a year following Experian's acquisition.[11] Experian claimed that it was not aware of the illegal activity until it was notified by the Secret Service, and that it cooperated fully with law enforcement.

45.    However, experts in the field point out that Experian, a company purporting to be a data expert, failed to not only perform adequate due diligence in acquiring or managing a new company, but neglected to adequately supervise ongoing illegal business practices. During this breach, the Social Security numbers of 200 million people were compromised, and the Internal Revenue Service has

---

[10] Finkle, *Massive Data Breach at Experian Exposes Personal Data for 15 Million T-Mobile Customers,* Huffington Post (Oct. 2, 2015), http://www.huffingtonpost.com/entry/experian-hacked-tmobile_560e0d30e4b0af3706e0481e (last visited Oct. 26, 2015).

[11] Krebs, *Experian Sold Consumer Data to ID Theft Service,* KrebsOnSecurity (Oct. 20, 2013), http://krebsonsecurity.com/2013/10/experian-sold-consumer-data-to-id-theft-service/ (last visited Oct. 26, 2015).

reported that over $65 million in fraudulent income tax returns were filed as a result.[12]

46.     In March of 2013, Experian and the two other major credit agencies admitted that several credit reports of famous people had been stolen by hackers and posted online.[13]

47.     Dissent Doe, a privacy advocate, told Bloomberg that he requested and received information regarding more than 100 additional breaches involving Experian's database based on information requested under the Freedom of Information Act.[14]

48.     Moreover, in December 2013, a subsidiary of Experian's parent corporation notably experienced a data breach of its servers that contained PII of T-Mobile customers including Social Security numbers and driver's license numbers.[15]

---

[12]Krebs, *Experian Breach Affects 15 Million Consumers*, KrebsOnSecurity (Oct. 2, 2015) http://krebsonsecurity.com/2015/10/experian-breach-affects-15-million-consumers/#more-32477.

[13]Robertson, *The Changes Coming to Credit Agencies Won't Stop Hackers: Experian, Equifax, and TransUnion are Prime Targets for Hackers,* Bloomberg (Mar. 3, 2015), http://krebsonsecurity.com/2015/10/at-experian-security-attrition-amid-acquisitions/http://www.bloomberg.com/news/articles/2015-03-09/the-changes-coming-to-credit-agencies-won-t-stop-hackers.

[14]*Id.*

[15] Krebs, *At Experian, Security Attrition Amid Acquisitions,* KrebsOnSecurity, http://krebsonsecurity.com/tag/experian-breach/ (last accessed Oct. 26, 2015).

49.     Given this track record, Experian was fully aware that the risk of potential data breaches was real, particularly in light of the precipitous increased occurrence and severity of data breaches in recent years.

50.     After these experiences and exposure, Experian was on notice to take aggressive steps to protect their client's information.

51.     Furthermore, in March of 2015, *Bloomberg* warned that Experian and the other credit agencies were prime targets for hackers, and expressed concern over the industry's security practices.[16]

**D.    Experian's Focus Has Been on Acquiring New Companies and Lobbying Congress for Immunity Rather than Securing Consumer Data**

52.     Upon information and belief, Experian has not made security a top priority despite its claims to the contrary.[17] Instead, Experian has focused resources on acquiring new companies in the data broker and analytics technology space.

53.     Moreover, since the departure of its Chief Information Officer John Finch in mid-2013, Experian has allowed the strength of its security systems to

---

[16] Robertson, *The Changes Coming to Credit Agencies Won't Stop Hackers: Experian, Equifax, and TransUnion are Prime Targets for Hackers,* Bloomberg (Mar. 3, 2015), http://www.bloomberg.com/news/articles/2015-03-09/the-changes-coming-to-credit-agencies-won-t-stop-hackers.

[17] Krebs, *At Experian, Security Attrition Amid Acquisitions*, KrebsOnSecurity (Oct. 15, 2015), http://krebsonsecurity.com/2015/10/at-experian-security-attrition-amid-acquisitions/.

dwindle – the staff at Experian's security operations center has shrunk from nearly 30 employees to about a dozen.[18] As explained by one Experian employee:

> Once the leadership changed, the focus changed to controlling costs and not taking systems down for maintenance, and investments started disappearing from a lot of areas. We were in the middle of putting into operation certain tools to do next-generation detection of [cyber] threats, but we weren't able to get many of them out into production. And that's how Experian wound up where they are now. [19]

54.     Experian's decision to control short-term costs at the expense of implementing preventative security measures based on advances in technology and cyber threats caused Jasun Tate, a former chief information security officer delegate and risk consultant, to leave Experian after "repeatedly running into problems getting buy-in or follow-up support for major projects to beef up security around Experian's growing stable of companies handling sensitive consumer and government data."[20] Other former employees also agreed that security efforts had "ground to a halt" in recent years.[21]

55.     Moreover, while Experian has been reported to have claimed that the PII stolen through the Data Breach was encrypted, T-Mobile CEO John Legere has

---

[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*

released a statement that Experian has acknowledged the hackers may have successfully decrypted this data.[22]

56.     Indeed, Experian's decision to skimp on preventative security in favor of cost-savings has already proved harmful to Class Members. Reports indicate that the PII stolen through the Data Breach is already for sale on illicit websites. *VentureBeat* reported on October 3, 2015 that an Irish fraud prevention company, Trustev, began seeing listings of data for sale on illicit websites which matched the types of information reported to be stolen in the Data Breach. A Trustev spokesperson explained that fraudsters typically unload stolen data very quickly, "So like I said, it's not definitely TMobile/Experian, but it's extremely likely considering the type of data and timing."[23]

57.     The speed with which the PII stolen through the Data Breach found its way to black market websites also suggests that Experian may not have encrypted the PII stored on its servers, or that its encryption efforts were lacking.[24]

---

[22] John Legere, *A Letter from CEO John Legere on Experian Data Breach*, T-Mobile (Oct. 1, 2015), https://newsroom.t-mobile.com/issues-insights-blog/experian-data-breach.htm.

[23] Sullivan, *Data Likely Stolen from Experian/T-Mobile Spotted for Sale on Dark Web, says Trustev*. Venure Beat (Oct. 3, 2015), http://venturebeat.com/2015/10/03/data-likely-stolen-from-experiant-mobile-spotted-for-sale-on-dark-web-says-security-firm/.

[24] Robert McGarvey, *Why the Experian-T-Mobile Hack May Bring Financial Doom to Millions,* The Street (Oct. 5, 2015), http://www.thestreet.com/story/13312302/1/why-the-experian-t-mobile-hack-may-bring-financial-doom-to-millions.html.

58.     Furthermore, upon information and belief, Experian has spent millions lobbying Congress to pass the Cybersecurity Information Sharing Act (CISA).[25] This bill would give it legal immunity when hacked, if it shares information with the government.

**E.     Class Members' Hacked PII was Valuable**

59.     Experian, the largest of the three national credit reporting agencies, provides detailed credit history information to which it applies a credit scoring model in order to generate a credit score. Credit scores are sold to creditors around the world who rely on them in deciding whether to extend credit to consumers.[26]

60.     Experian, recognizing the value of the more than 220 million consumer credit files that it manages, represents that: "It is our commitment to protect and manage those files[.]"[27] This commitment is consistent with its

---

[25] James A. Hood, *Critics say Experian CEO should resign after the latest data breach*, Consumer Affairs (Oct. 5, 2015), http://www.consumeraffairs.com/ news/critics-say-experian-ceo-should-resign-after-the-latest-data-breach-100515.html.

[26] *See A Global Leader ... Our Responsibility,* Experian, http://www.experian.com/ ourcommitment/our-responsibility.html (last visited Oct. 26, 2015); *see also Frequently Asked Questions on Credit Reports,* Experian, http://www.experian.com/ourcommitment/credit-report-faqs.html (last visited Oct. 26, 2015).

[27] *See Commitment to Data Integrity,* Experian, http://www.experian.com/ ourcommitment/data-integrity.html (last visited Oct. 26, 2015); *see also A Global Leader ... Our Responsibility,* Experian, http://www.experian.com/ ourcommitment/our-responsibility.html (last visited Oct. 26, 2015).

financial interest in selling consumer credit history and credit scores for profit to businesses that make consumer credit inquiries to Experian.[28]

61.    Because Experian collects and stores millions of consumer credit profiles, including consumer PII and consumer payment history from large and small creditors, Experian was a particularly fruitful vessel from which to steal an enormous amount of both financial and non-financial PII. As explained by *Next Advisor:*

> [A] server owned by one of the three credit bureaus was hacked. To think that an entity that holds so much personal information can be breached in any way – even if it's just one server – is frightening.[29]

62.    Moreover, the scope of the sensitive PII stolen from Experian servers "is akin to a Lego set for an identity thief." [30] Indeed, non-financial PII is widely reported to be worth 10 times more than a credit card number on the black market, and Dell SecureWorks reported in December 2014 that a dossier of personal information like that stolen in the Data Breach consisting of a name, address,

---

[28] *See A Global Leader … Our Responsibility,* Experian, http://www.experian.com/ourcommitment/our-responsibility.html (last visited Oct. 26, 2015).

[29] Myhre, *Experian Breach Exposes 15 Million T-Mobile Customers, Applicants' Information: What You Need to Know*, NextAdvisor (Oct. 6, 2015), http://www.nextadvisor.com/blog/2015/10/02/experian-breach-exposes-15-million-t-mobile-customers/ (last visited Oct. 26, 2015).

[30] Malik, *Why Companies Won't Learn from the T-Mobile Experian Hack*, The New Yorker (Oct. 6, 2015), http://www.newyorker.com/business/currency/why-companies-wont-learn-from-the-t-mobileexperian-hack (last visited Oct. 26, 2015).

birthdate, Social Security number, and other information typically sells for $25 to $40 each.[31]

63.     As three members of the Senate Commerce Committee acknowledged in an October 7, 2015 letter to Experian, this particular Data Breach is "extremely troubling" due to the "sensitive nature of compromised personal data, and its particular value to identity thieves" as reported by KrebsOnSecurity.[32]

64.     Unlike stolen credit card numbers, which tend to be quickly identified by banks and cancelled and re-issued with a new number, non-financial data theft is often not immediately identified, giving criminals years to use this PII.

65.     Moreover, identity thieves that have access to non-financial PII are able to set up numerous different kinds of fraudulent accounts using a single customer's information, so the payoff is much larger.

**F.     Unauthorized Access to Non-Financial PII is Costly to Its Owners**

66.     An identity thief uses a victim's PII, such as name, address, and other sensitive and confidential information, without permission, to commit fraud or other crimes that range from immigration fraud, obtaining a driver's license or identification card, obtaining government benefits, and filing fraudulent tax returns

---

[31] *The Underground Hacking Economy is Alive and Well*, Dell SecureWorks (Nov. 18, 2013), http://www.secureworks.com/resources/blog/the-underground-hacking-economy-is-alive-and-well/ (last visited Oct. 26, 2015).

[32] Krebs, *At Experian, Security Attrition Amid Acquisitions*, KrebsOnSecurity (Oct. 8, 2015), http://krebsonsecurity.com/2015/10/at-experian-security-attrition-amid-acquisitions/ (last visited Oct. 26, 2015).

to obtain tax refunds. Identity thieves can also use a victim's PII to open new financial accounts and incur charges in the victim's name, take out loans in the victim's name, and incur charges on existing accounts of the victim.

67.     Javelin Strategy & Research reported in its 2014 Identity Fraud Study that "[d]ata breaches are the greatest risk factor for identity fraud" and that in 2013, "one in three consumers who received notification of a data breach became a victim of fraud."[33]

68.     Moreover, security and identity theft expert for Credit Sesame has compared a person's Social Security number—which was compromised in the Data Breach—to a person's "secret sauce," which is as good as DNA to hackers.[34]

69.     However, when consumers and borrowers have their Social Security numbers stolen through a data breach, they have to wait until they become victims of Social Security number misuse before they can obtain a new one. Even then, the Social Security Administration has warned that a new Social Security number probably will not solve all problems, will not guarantee a fresh start, and can create new problems. For example, a new Social Security number has a completely blank

---

[33] *Wright Identity Shield - Identity Theft Statistics,* http://www.wrightusa.com/products/wright-identity-shield/statistics/ (last visited Oct. 26, 2015).

[34] Cameron Huddleston, *How to Protect Your Kids from the Anthem Data Breach,* Kiplinger, (Feb. 10, 2015), http://www.kiplinger.com/article/credit/T048-C011-S001-how-to-protect-your-kids-from-the-anthem-data-brea.html#djkDlop4Xk CzI4LO.99 (last visited Oct. 26, 2015).

credit history, making it difficult to get credit for years unless it is linked to the old compromised number.[35]

70.    Once use of compromised non-financial PII is detected, the emotional and economic consequences to the victims tend to be significant. Studies done by the ID Theft Resource Center, a non-profit organization, found that victims of identity theft had marked increased fear for personal financial security. The report attributes this to more people having been victims before, and that there is greater awareness and understanding that they may suffer long term consequences from this type of crime.[36]

71.    Experian itself recognizes the cost to consumers of credit information that is tarnished:

> Credit data powers lending, commerce and our economy and enables consumers to have access to reasonably priced credit to get the things they need to live a productive life. … A credit report does not only affect what credit someone can access but also how much they pay for it, as lenders link the lending terms such as interest rates and fees to the risk that a person will not repay the debt. It means that a poor credit history can result in more costly credit repayments.[37]

72.    Credit freezes, however, can prevent identity thieves from taking out new credit through misuse of a borrower or consumer's name, Social Security

---

[35]*Id.*

[36]*Identity Theft: The Aftermath 2013*, Identity Theft Resource Center, http://www.idtheftcenter.org/images/surveys_studies/Aftermath2013.pdf (last visited Oct. 26, 2015).

[37]*Frequently Asked Questions on Credit Reports,* Experian, http://www.experian.com/ourcommitment/credit-report-faqs.html (last visited Oct. 26, 2015).

number, and other personal information before consumer's credit information is tarnished. [38]

73.     When a credit record is frozen, it prevents lenders and other creditors from seeing credit reports unless the borrower or consumer specifically grants them access to it.

74.     Experian acknowledges that credit freezes offer consumers additional protection and is now offering to place a credit freeze at Experian to "those impacted by the breach involving T-Mobile data," without charge. However, for a credit freeze to be effective, the record at all three credit bureaus must be frozen. [39]

75.     The cost to freeze a credit record and lift the freeze on a credit record varies by state, but in general, the cost is $10 to freeze the credit record at each bureau and another $10 to lift it, even temporarily. [40]

76.     Importantly, Experian has not offered to provide any of the following to Class Members without charge: (a) lifting credit freezes placed by Class Members impacted by the Data Breach when Class Members need to allow access to their credit records; (b) reinstating credit freezes at Experian after Class members have allowed access to their credit records; or (c) placing credit freezes at

---

[38] Kimberly Lankford, *Fraud Alert vs. Credit Freeze,* Kiplinger (Mar. 6, 2008), http://www.kiplinger.com/article/credit/T017-C001-S001-fraud-alert-vs-credit-freeze.html.
[39] *Id.*
[40] *Id.*

the other two credit bureaus, Equifax and TransUnion, which are necessary to make a credit freeze effective.

77.     In addition to incurring costs to freeze and lift freezes on credit records, consumers may be required to wait as long as three days to lift the freeze, which represents an additional hurdle that consumers must clear before taking action to receive increased or new lines of credit.[41]

## VI.   CLASS ACTION ALLEGATIONS

78.     Plaintiff brings claims pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and classes of similarly situated persons, which she initially proposes to be defined as follows:

### Nationwide Class

All T-Mobile applicants and customers in the United States whose PII was compromised as a result of the Data Breach first publicized on October 1, 2015.

### Washington Class

All T-Mobile applicants and customers who currently reside in or resided in Washington between September 1, 2013 and September 16, 2015, and whose PII was compromised as a result of the Data Breach first publicized on October 1, 2015.

79.     **Numerosity.** The Classes are sufficiently numerous, as approximately 15 million T-Mobile applicants and customers nationwide—and more than 300,000 applicants and customers in Washington State alone—have had their PII stolen through the Data Breach, making joinder of each individual member

[41] *Id.*

impracticable. Members of the Classes can be readily identified by records maintained by Experian.

80.    **Commonality.** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class Members.

For the Nationwide Class, common questions include:

a.    Whether Experian had a legal duty to use reasonable security measures to protect Class Members' PII;

b.    Whether Experian timely, accurately, and adequately informed Plaintiff and Class Members that their PII had been compromised;

c.    Whether Experian breached its legal duty by failing to protect Class Members' PII;

d.    Whether Experian acted reasonably in securing Class Members' PII;

e.    Whether Experian violated the Fair Credit Reporting Act, 15 U.S.C. §1681, et seq., by failing to implement reasonable security procedures and practices to protect Cass Member PII;

f.    Whether it was unlawful, unfair, or fraudulent within the meaning of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. for Experian to: (1) fail to implement reasonable security procedures

and practices to protect Class Members' PII; and/or (2) fail to promptly notify Class Members that their PII had be compromised;

g.      Whether Class Members are entitled to actual damages and/or statutory damages; and

h.      Whether Class Members are entitled to declaratory, injunctive relief, or other equitable relief.

For the Washington Class, common questions include:

a.      Whether Experian violated Washington Data Breach Notification Law, RCW § 19.255.010, by failing to implement reasonable security procedures and practices to protect Class Members' PII and failing to promptly notify Class Members that their PII had be compromised;

b.      Whether the information compromised by the Data Breach was "personal information" as defined by RCW § 19.255.010;

c.      Whether it was unfair or deceptive within the meaning of the Washington Consumer Protection Act, RCW ch. 19.86 to: (1) fail to implement reasonable security procedures and practices to protect Class Members' PII and/or (2) fail to promptly notify Class Members that their PII had be compromised;

d.      Whether the Class Members are entitled to damages; and

e.      Whether the Class Members are entitled to declaratory or injunctive relief.

81.   **Typicality.** Plaintiff's claims are typical of the claims of members of the proposed Classes because, among other things, Plaintiff and Class Members sustained similar injuries as a result of Experian's uniform wrongful conduct and their legal claims all arise from the same conduct by Experian.

82.   **Adequacy.** Plaintiff will fairly and adequately protect the interests of the proposed Classes. Plaintiff's interests do not conflict with Class Members' interests and she has retained counsel competent and experienced in complex class action and data privacy litigation to prosecute this case on behalf of the Classes.

83.   **Rule 23(b)(3).** In addition to satisfying the prerequisites of Rule 23(a), the requirements for maintaining a class action under Rule 23(b)(3) are satisfied. Common questions of law and fact pertaining to Experian's common course of conduct towards the Classes before, during, and after the Data Breach predominate over any questions affecting only individual Class Members. In addition, a class action is superior to individual litigation here. The amount of damages available to individual consumers is insufficient to make litigation addressing Experian's conduct economically feasible in the absence of the class action procedure. The adjudication of this controversy through a class action will also avoid the possibility of an inconsistent and potentially conflicting adjudication of the claims asserted herein. Finally, Plaintiff's counsel has experience litigating complex class actions and data privacy litigation that will ensure this action is effectively, efficiently, and economically litigated and concluded.

84. **Rule 23(b)(2).** The requirements for maintaining a class action under Rule 23(b)(2) are also satisfied. Experian has acted or refused to act on grounds that apply generally to the proposed Classes, making final declaratory or injunctive relief appropriate with respect to the proposed Classes as a whole.

## VII.   CAUSES OF ACTION

### COUNT I: Negligence

85. Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs of this Complaint as if fully set forth herein.

86. Plaintiff brings this cause of action on behalf of the Nationwide Class.

87. In collecting and retaining the credit, financial, and other sensitive PII of T-Mobile customers, Experian, as a credit reporting agency, owed Plaintiff and Class Members a duty to exercise reasonable safeguarding and protecting that information. This duty included, among other things, maintaining and testing Experian's security systems and taking other reasonable security measures to protect and adequately secure the PII of Plaintiff and Class Members from unauthorized access.

88. Experian's security system and procedures for handling the financial, credit and other PII of Class Members were intended to and did affect Plaintiff and Class Members. Experian knew that by collecting and storing T-Mobile applicants' and customers' sensitive PII, it undertook a responsibility to take reasonable

security measures to protect the information from being stolen and exposed to unauthorized persons.

89.     Experian owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate security practices. It was foreseeable that if Experian did not take reasonable security measures, the Plaintiff's and Class Members' PII would be stolen. The risk of security breach increases with the amount of PII possessed. Because Experian collects and stores data from all large and small creditors with which the Plaintiff's and the Class Members' interact, Experian was a particularly fruitful vessel from which to steal consumer PII. Experian knew or should have known its security systems were inadequate, but Experian failed to take reasonable precautions to safeguard the Plaintiff's and Class Members' PII.

90.     The duty Experian owed to Plaintiff and members of the Class to protect their PII is underscored by the Washington Data Breach Notification Law, which recognizes the importance of maintaining the confidentiality of PII and was enacted to protect individuals from the unauthorized exposure of their PII; likewise, the Fair Credit Reporting Act, limits the dissemination of consumer credit information to certain well-defined circumstances and no other.

91.     Experian also had a duty to timely disclose to Plaintiff and Class Members that their PII had been or was reasonably believed to have been compromised. Timely disclosure was necessary so that Plaintiff and members of

the Class could, among other things: (i) buy identity protection, monitoring, and recovery services; (ii) flag asset, credit, and tax accounts for fraud, including reporting the theft of their Social Security numbers to financial institutions, credit agencies, and the Internal Revenue Service; (iii) purchase or otherwise obtain credit reports; (iv) monitor credit, financial, utility, and other account statements on a monthly basis for unrecognized credit inquiries, Social Security numbers, home addresses, and charges; (v) place and renew credit fraud alerts on a quarterly basis; (vi) routinely monitor public records, loan data, or criminal records; (vii) contest fraudulent charges and other forms of criminal and financial identity theft, and repair damage to credit and other financial accounts; and (viii) take other steps to protect themselves and recover from identity theft and fraud.

92.     Experian has admitted that Class Member PII was exposed as a result of the Data Breach. As a result of Experian's negligence, Plaintiff and members of the Class have suffered and will suffer injury, including but not necessarily limited to: (1) the loss of the opportunity to control how their PII is used; (2) the diminution in the value and/or use of PII entrusted to Experian for the purpose of deriving services from T-Mobile when Plaintiff and class members understood that their PII would be safeguarded against theft and misuse by others; (3) the compromise, publication, and/or theft of their PII; (4) out-of-pocket costs associated with prophylactic measures taken to prevent, detect, and recover from identity theft and/or unauthorized use of financial and credit accounts; (5) lost

opportunity costs associated with effort expended and the loss of productivity from

addressing and attempting to mitigate the actual and future consequences of the

breach, including but not limited to efforts spent researching how to prevent,

detect, contest and recover from identity and health care/medical data misuse; (6)

costs associated with the ability to use credit and assets frozen or flagged due to

credit misuse, including complete credit denial and/or increased costs to use credit,

credit scores, credit reports and assets; (7) unauthorized use of compromised PII to

open new financial and/or health care or medical accounts; (8) tax fraud and/or

other unauthorized charges to financial, health care or medical accounts and

associated lack of access to funds while proper information is confirmed and

corrected; (9) the continued risk to their PII, which remains in Experian's

possession and is subject to further breaches so long as Experian fails to undertake

appropriate and adequate measures to protect the PII in its possession; and (10)

future costs in terms of time, effort and money that will be expended to prevent,

detect, contest, and repair the impact of the PII compromised as a result of the Data

Breach for the remainder of the Class Members' lives.

     93.    There is a very close connection between Experian's failure to use

reasonable security protections of Class Member PII and the injuries suffered by

Plaintiff and Class Members. When individuals have their PII stolen, they are at

risk for identity theft, and need to: (i) buy identity protection, monitoring, and

recovery services; (ii) flag asset, credit, and tax accounts for fraud, including

reporting the theft of their Social Security numbers to financial institutions, credit agencies, and the Internal Revenue Service; (iii) purchase or otherwise obtain credit reports; (iv) monitor credit, financial, utility, and other account statements on a monthly basis for unrecognized credit inquiries, Social Security numbers, home addresses, and/or charges; (v) place and renew credit fraud alerts on a quarterly basis; (vi) routinely monitor public records, loan data, and criminal records; (vii) contest fraudulent charges and other forms of criminal and financial identity theft, and repair damage to credit and other financial accounts; and (viii) take other steps to protect themselves and recover from identity theft and fraud.

94.     Experian is responsible for not protecting the PII of the Class Members. If Experian had reasonable security measures in place, data thieves would not have been able to steal and expose Class Members' PII.

95.     The policy of preventing future harm weighs strongly in favor of finding a special relationship between Experian and Class Members. Experian was entrusted with the Plaintiff's and Class Members' sensitive financial and other personal information as a condition for obtaining services from T-Mobile and depended on Experian to ensure that this information was protected from theft and unauthorized disclosure. If credit agencies are not held accountable for failing to take reasonable security measures to protect debtor PII, they will not take the steps that are necessary to protect against future data breaches.

96.     Experian breached its duty to exercise reasonable care in protecting the PII of Plaintiff and the Class by failing to implement and maintain adequate security measures to safeguard PII, failing to monitor its systems to identify suspicious activity, and allowing unauthorized access to the PII of Plaintiff and Class Members.

97.     Experian breached its duty to timely notify Plaintiff and the Class about the Data Breach. On information and belief, Experian has not yet notified Plaintiff or Class Members that their PII had been or was reasonably believed to have been compromised.

98.     But for Experian's failure to implement and maintain adequate security measures to protect Class Members' PII and failure to monitor its systems to identify suspicious activity, the PII of Plaintiff and Class Members would not have been stolen, Plaintiff and Class Members would not have been injured, and Plaintiff and Class Members would not be at a heightened risk of identity theft in the future.

99.     Experian's negligence was a substantial factor in causing harm to Plaintiff and Class Members. As a direct and proximate result of Experian's failure to exercise reasonable care and use commercially reasonable security measures, Plaintiff's and Class Members' PII was accessed by unauthorized individuals who can allow this compromised PII to be used to commit identity theft and identity fraud.

100.   As a result of Experian's negligence, Plaintiff and members of the Class are entitled to injunctive relief, including, but not limited to an order that Experian: (1) engage third party security auditors/penetration testers as well as internal security personnel to conduct testing consistent with prudent industry practices, including simulated attacks, penetration tests, and audits on Experian's systems on a periodic basis; (2) engage third party security auditors and internal personnel to run automated security monitoring consistent with prudent industry practices; (3) audit, test, and train its security personnel regarding any new or modified procedures; (4) purge, delete and destroy, in a secure manner, Class Member PII not necessary for its business operations; (5) conduct regular database scanning and securing checks consistent with prudent industry practices; (6) periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach consistent with prudent industry practices; (7) receive periodic compliance audits by a third party regarding the security of the computer systems Experian uses to store the PII of Class Members; (8) meaningfully educate Plaintiff and Class Members about the threats they face as a result of the loss of their PII to third parties, as well as the steps they must take to protect themselves; and (9) provide ongoing identity theft protection, monitoring, and recovery services to Plaintiff and Class Members.

101.   Plaintiff and the Class are also entitled to damages and reasonable attorneys' fees and costs. Plaintiff also seeks reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23 and California Code of Civil Procedure § 1021.5.

## COUNT II: Willful Violation of the Fair Credit Reporting Act Under 15 U.S.C. § 1681, et seq.

102.   Plaintiff incorporates the above allegations by reference.

103.   Plaintiff brings this cause of action on behalf of the Nationwide Class.

104.   Congress enacted the Fair Credit Reporting Act "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). Congress recognized that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on customers." 15 U.S.C. § 1681(a)(3).

105.   Plaintiff and Class Members are "consumer[s]" within the meaning of 15 U.S.C. § 1681a(c).

106.   Experian is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f) because Experian "regularly engages . . . in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and . . .

uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports" for monetary fees.

107.   The information disclosed in the Data Breach—names, addresses, birthdates, Social Security numbers, and other information—qualifies as a "consumer report" under the Fair Credit Reporting Act because it is:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for-- (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

108.   The Fair Credit Reporting Act requires consumer reporting agencies like Experian to "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e(a). Section 1681b does not permit disclosure to unauthorized individuals.

109.   Experian willfully and recklessly failed to maintain reasonable procedures necessary to comply with the Fair Credit Reporting Act, as demonstrated by Experian's prior history of data and security breaches. This willful and reckless conduct injured Plaintiff and Class Members.

110.   Plaintiff and members of the Class are entitled to "actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000." Plaintiff and Class Members are also entitled to punitive damages, costs of this action, and reasonable attorneys' fees, as set forth in 15 U.S.C. § 1681n(a)(2), (3).

**COUNT III: Negligent Violation of the Fair Credit Reporting Act Under 15 U.S.C. § 1681, et seq.**

111.   Plaintiff incorporates the above allegations by reference.

112.   Plaintiff brings this cause of action on behalf of the Nationwide Class.

113.   Congress enacted the Fair Credit Reporting Act "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). Congress recognized that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on customers." 15 U.S.C. § 1681(a)(3).

114.   Plaintiff and Class Members are "consumer[s]" within the meaning of 15 U.S.C. § 1681a(c).

115.   Experian is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f) because Experian "regularly engages . . . in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and . . .

uses any means or facility of interstate commerce for the purpose of preparing or

furnishing consumer reports" for monetary fees.

116.   The information disclosed in the Data Breach—names, addresses,

birthdates, Social Security numbers, and other information—qualifies as a

"consumer report" under the Fair Credit Reporting Act because it qualifies as:

> [A]ny written, oral, or other communication of any information by a
> consumer reporting agency bearing on a consumer's credit worthiness,
> credit standing, credit capacity, character, general reputation, personal
> characteristics, or mode of living which is used or expected to be used or
> collected in whole or in part for the purpose of serving as a factor in
> establishing the consumer's eligibility for-- (A) credit or insurance to be
> used primarily for personal, family, or household purposes; (B)
> employment purposes; or (C) any other purpose authorized under section
> 1681b of this title.

15 U.S.C. § 1681a(d)(1).

117.   The Fair Credit Reporting Act requires consumer reporting agencies

like Experian to "maintain reasonable procedures designed to . . . limit the

furnishing of consumer reports to the purposes listed under section 1681b of this

title." 15 U.S.C. § 1681e(a). Section 1681b does not permit disclosure to

unauthorized individuals.

118.   Experian was negligent in failing to maintain reasonable procedures

necessary to comply with the Fair Credit Reporting Act. This conduct injured

Plaintiff and Class Members.

119.   Plaintiff and Class Members are entitled to "actual damages sustained by the consumer." Plaintiff and Class Members are also entitled to costs of the action, and reasonable attorneys' fees, as set forth in 15 U.S.C. § 1681o(a)(2).

**COUNT IV: Violation of the Unfair Competition Law California Business and Professions Code Section 17200, *et seq*.**

120.   Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

121.   Plaintiff bring this cause of action on behalf of the Nationwide Class.

122.   Experian engaged in unlawful, unfair, and fraudulent business practices in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. ("UCL").

123.   Experian's acts, omissions and conduct constitute unlawful, unfair, and fraudulent business practices under the UCL.

124.   Experian's acts, omissions and conduct were unlawful because they violated the Fair Credit Reporting Act under 15 U.S.C. § 1681, et seq. and because they were negligent.

125.   Experian's practices were unlawful and in violation of Civil Code section 1798.81.5(b) because Experian failed to take reasonable security measures in protecting consumers' PII.

126.   Experian's acts, omissions and conduct constitute a violation of the unlawful prong of the UCL because Experian failed to comport with a reasonable

standard of care and public policy as reflected in statutes like the Fair Credit Reporting Act under 15 U.S.C. § 1681, et seq., which was enacted to protect consumers and their personal information and ensure that entities that solicit or are entrusted with personal information use reasonable security measures.

127.   Experian's acts, omissions, and conduct also constitute "unfair" business acts or practices because they offend public policy and constitute immoral, unethical, and unscrupulous activities that caused substantial injury, including to Plaintiff and Class Members. The gravity of harm resulting from Experian's conduct outweighs any potential benefits attributable to the conduct and there were reasonably available alternatives to further Experian's legitimate business interests.

128.   Experian has engaged in fraudulent business practices by making material misrepresentations and by failing to disclose material information regarding Experian's deficient security policies and practices, the security of the PII of Plaintiff and Class Members, and the Data Breach.

129.   Experian had exclusive knowledge of material information regarding its deficient security policies and practices, and regarding the security of the PII of Plaintiff and Class Members. This exclusive knowledge also includes information regarding Experian's data security, not reported publicly, that Experian received in connection with data breaches at Experian and its parent company's other subsidiaries that occurred over the years. Experian also had exclusive knowledge

concerning the measures, or lack thereof, that Experian took in response to the data breaches that have occurred over the years at Experian and its parent company's subsidiaries in response to the various audits that have reflected security gaps at these companies.

130.   Experian also had exclusive knowledge about the extent of the Data Breach, including during the days and weeks following the Data Breach.

131.   Experian failed to disclose, and actively concealed, the material information it had regarding Experian's deficient security policies and practices, and regarding the security of the PII of Plaintiff and Class Members. For example, even though Experian has long known, through internal audits and otherwise, that its security policies and practices were substandard and deficient, and that the PII of Plaintiff and Class Members was vulnerable as a result, Experian failed to disclose this information to, and actively concealed this information from, Plaintiff, Class Members and the public. Likewise, in the days and weeks following the Data Breach, Experian failed to disclose, and actively concealed, information that it had regarding the extent and nature of the Data Breach.

132.   Experian also has made material affirmative misrepresentations about Experian's security policies and practices and the security of the PII of Plaintiff and Class Members.

133.   Experian had a duty to disclose the material information that it had because, *inter alia*, it had exclusive knowledge of the information, it actively

concealed the information, it made affirmative statements that were inconsistent with the information it did not disclose, and because Experian was in a fiduciary position vis-à-vis Plaintiff and Class Members by virtue of the fact that Experian collected and maintained their credit and financial information, and other PII.

134.   Experian's misrepresentations and omissions were material, misleading, and had a tendency to deceive.

135.   Plaintiff and the Class were misled by Experian's misrepresentations and omissions about Experian's data security, and they reasonably relied upon them to their detriment. But for Experian's misrepresentations and omissions, Plaintiff and the Class would not have provided the PII that they provided to Experian and would have insisted that their PII be more securely protected. They also would have taken additional steps to protect their identities and to protect themselves from the sort of harm that could flow from Experian's unreasonable security measures. But for Experian's misrepresentations and omissions, Plaintiff and the Class would not be experiencing identity theft, identity fraud, and/or the increased risk of harm they are now facing, as a result of the Data Breach. But for the fact that Experian sat on information regarding the Data Breach, rather than immediately disclosing it, Plaintiff and the Class would have taken more immediate steps to protect their identities and they would have been able to minimize the harm they have suffered as a result of the Data Breach.

136.   As a direct and proximate result of Experian's unlawful, unfair, and fraudulent business practices as alleged herein, Plaintiff and members of the Class have suffered injury in fact. Plaintiff and Class Members have been injured in that their personal, financial, and medical PII has been compromised, subject to identity theft, identity fraud, and/or is at risk for future identity theft and fraudulent activity on their financial accounts. Class Members have also lost money and property that would not have be lost but for Experian's unlawful and unfair conduct.

137.   As a direct and proximate result of Experian's unlawful, unfair, and fraudulent business practices as alleged herein, Plaintiff and Class Members have already suffered from identity theft, identity and financial fraud, and/or a continuing increased risk of identity theft and identity, financial and medical fraud due to the compromise, publication, and/or unauthorized use of their financial, credit and/or other PII. Plaintiff and the Class have also been injured by, among other things: (1) the loss of the opportunity to control how their PII is used; (2) the diminution in the value and/or use of their PII entrusted to Experian with the understanding that it would be safeguarded against theft and misuse by others; (3) the compromise, publication, and/or theft of their PII; (4) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of credit and financial accounts; (5) lost opportunity costs associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the breach, including

but not limited to efforts spent researching how to prevent, detect, contest and

recover from identity and credit and financial data misuse; (6) costs associated

with the ability to use credit and assets frozen or flagged due to credit misuse,

including complete credit denial and/or increased costs to use credit, credit scores,

credit reports and assets; (7) unauthorized use of compromised PII to open new

financial and/or health care or medical accounts; (8) tax fraud and/or other

unauthorized charges to financial, health care or medical accounts and associated

lack of access to funds while proper information is confirmed and corrected; (9)

the continued risk to their PII which remains in Experian's possession and is

subject to further breaches so long as Experian fails to undertake appropriate and

adequate measures to protect the PII in its possession; and (10) future costs in

terms of time, effort and money that will be expended to prevent, detect, contest,

and repair the impact of the PII compromised as a result of the Data Breach for the

remainder of the Class Members' lives.

138.   As a result of Experian's violations of the UCL, Plaintiffs and

members of the Class are entitled to injunctive relief, including, but not limited to

an order that Experian: (1) engage third party security auditors/penetration testers,

as well as internal security personnel, to conduct testing consistent with prudent

industry practices, including simulated attacks, penetration tests, and audits on

Experian's systems on a periodic basis; (2) engage third party security auditors and

internal personnel to run automated security monitoring consistent with prudent

industry practices; (3) audit, test, and train its security personnel regarding any new or modified procedures; (4) purge, delete and destroy, in a secure manner, employee data not necessary for its business operations; (5) conduct regular database scanning and securing checks consistent with prudent industry practices; (6) periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach consistent with prudent industry practices; (7) receive periodic compliance audits by a third party regarding the security of the computer systems Experian uses to store the PII of the Class Members; (8) meaningfully educate the Class Members about the threats they face as a result of the loss of their PII to third parties, as well as the steps they must take to protect themselves; and (9) provide ongoing identity theft protection, monitoring, and recovery services to Plaintiff and Class Members.

139.   Because of Experian's unlawful, unfair, and fraudulent business practices, Plaintiff and Class Members are entitled to relief, including attorneys' fees and costs, restitution, declaratory relief, and a permanent injunction enjoining Experian from its unlawful and unfair practices. Plaintiff also seeks reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23 and California Code of Civil Procedure § 1021.5.

## COUNT V: Violation of Washington Data Breach Notification Law, RCW § 19.255.010

140.   Plaintiff realleges and incorporates all previous allegations.

141.   Plaintiff brings this cause of action on behalf of the Washington Class.

142.   In its ordinary course of business, Experian maintains computerized data that contains credit, financial, and personal data owned by Plaintiff and members of the Washington Class.

143.   The Data Breach that Experian discovered on or about September 15, 2015 resulted in unauthorized acquisition of Plaintiff's and Washington Class Members' computerized data pertaining to their applications for T-Mobile's cellular telephone and data services between September 1, 2013 and September 16, 2015, which was maintained and stored by Experian, and which compromised the security, confidentiality, or integrity of credit, financial, and personal information.

144.   Such breach caused Plaintiff's and the Class Members' PII – specifically including first and last names in combination with Social Security numbers – to be disclosed to an unauthorized person or persons.

145.   Experian's notification by letter of the Data Breach is not scheduled to reach affected consumers until November 30, 2015—a full two and one-half months after the discovery of the Data Breach—which is longer than "the most expedient time possible and without unreasonable delay, consistent with the

legitimate needs of law enforcement … or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system."

146.    Experian's failure to timely notify Plaintiff and Washington Class Members that their credit, financial and personal information was obtained by an unauthorized person or persons violate RCW § 19.255.010, and the delay between the date of intrusion and the date Experian disclosed the data breach further evidence Experian's negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Washington Class Members' credit, financial, and personal information in Experian's possession.

147.    Plaintiff and Washington Class Members suffered injuries and losses described herein as a proximate result of Experian's conduct resulting in the Data Breach, including Experian's lack of adequate reasonable and industry-standard security measures, and delay in notifying Plaintiff and Washington Class Members of the Data Breach.

**COUNT VI: Violation of Washington Consumer Protection Act,
RCW 19.86, *et seq.***

148.    Plaintiff realleges and incorporates all previous allegations.

149.    Plaintiff brings this cause of action on behalf of the Washington Class.

150.    The purpose of Washington Consumer Protection Act, RCW § 19.86.010 *et seq.* ("CPA") is "to protect the public and foster fair and honest

competition …" The act is "liberally construed" to serve its beneficial purposes. RCW § 19.86.920.

151.   To achieve its goals, the CPA prohibits any person from using "unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce ..." RCW § 19.86.020.

152.   In the context of the CPA, pleading and proof of an unfair or deceptive act or practice bears no resemblance to pleading and proof of common-law fraud. It can be predicated on an act or practice that has the capacity to deceive the public; or an unfair or deceptive act or practice not regulated by statute but in violation of public interest. An act or practice can be unfair without being deceptive and still violate the CPA.

153.   Experian, by failing to maintain sufficient security to keep Plaintiff's and Washington Class Members' confidential credit, financial, and personal data from being hacked and taken by others engaged in wrongful conduct that was both unfair and deceptive within the meaning of the CPA.

154.   Experian's wrongful practices occurred in the conduct of trade or commerce.

155.   Experian's wrongful practices were and are injurious to the public interest because those practices were part of a generalized course of conduct on the part of Experian that applied to all class members and were repeated continuously before and after Experian obtained confidential credit, financial, and personal data

concerning Plaintiff. All Washington Class Members have been adversely affected by Experian's conduct and the public was and is at risk.

156.    As a result of Experian's wrongful conduct, Plaintiff and the Washington Class Members were injured in their business or property in that they never would have allowed their sensitive and personal data – property that they have now lost – to be provided to Experian if they had been told or knew that Experian failed to maintain sufficient security to keep such data from being hacked and taken by others.

157.    Experian's unfair and/or deceptive conduct proximately caused Plaintiff's and the Class Members' injury because, had Experian maintained the sensitive information with adequate security, Plaintiff and the Washington Class Members would not have lost it.

158.    Plaintiff and the Washington Class Members seek actual and treble damages, injunctive relief, and attorneys' fees and costs for their injury.

**COUNT VII: Declaratory Judgment**

159.    Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

160.    Plaintiff brings this cause of action on behalf of the Nationwide Class and the Washington Class.

161.    As previously alleged, Plaintiff and the Nationwide Class have stated claims against Experian based on negligence and the Fair Credit Reporting Act

Under 15 U.S.C. § 1681, et seq., and Plaintiff and the Washington Class have stated claims against Experian based on the Washington Data Breach Notification Law, RCW § 19.255.010, and the Washington Consumer Protection Act, RCW 19.86, *et seq.*

162.   Experian has failed to live up to its obligations to provide reasonable security measures for the PII of Plaintiff and the Classes, as indicated by its corporate history of security breaches and the specific Data Breach that precipitated this lawsuit.

163.   In addition, the Data Breach has rendered Experian's system even more vulnerable to unauthorized access and requires that Experian immediately take even more stringent measures to currently safeguard the PII of Plaintiff and the Classes going forward.

164.   An actual controversy has arisen in the wake of Experian's Data Breach regarding Experian's *current* obligations to provide reasonable data security measures to protect the PII of Plaintiff and the Classes. On information and belief, Experian maintains that its security measures were, and remain, reasonably adequate. On information and belief, Experian further denies that it previously had or now has any obligation to better safeguard the PII of Plaintiff and the Classes.

165.   Plaintiff thus seeks a declaration that to comply with its existing obligations, Experian must implement specific additional, prudent industry security

practices, as outlined below, to provide reasonable protection and security to the PII of Plaintiff and the Classes.

166.   Specifically, Plaintiff and the Classes seek a declaration that (a) Experian's existing security measures do not comply with its obligations, and (b) that to comply with its obligations, Experian must implement and maintain reasonable security measures on behalf of Plaintiff and the Classes, including, but not limited to: (1) engaging third party security auditors/penetration testers as well as internal security personnel to conduct testing consistent with prudent industry practices, including simulated attacks, penetration tests, and audits on Experian's systems on a periodic basis; (2) engaging third party security auditors and internal personnel to run automated security monitoring consistent with prudent industry practices; (3) auditing, testing, and training its security personnel regarding any new or modified procedures; (4) purging, deleting and destroying, in a secure manner, consumer and borrower data not necessary for its business operations; (5) conducting regular database scanning and securing checks consistent with prudent industry practices; (6) periodically conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach consistent with prudent industry practices; (7) receiving periodic compliance audits by a third party regarding the security of the computer systems Experian uses to store the personal information of consumers and borrowers; (8) meaningfully educating consumers and borrowers

about the threats they face as a result of the loss of their PII to third parties, as well as the steps they must take to protect themselves; and (9) providing ongoing identity theft protection, monitoring, and recovery services to Plaintiff and Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Classes set forth herein, respectfully requests the following relief:

A.      Certify this case as a class action on behalf of the Classes defined above, appoint Plaintiff as class representative and appoint Plaintiff's counsel as class counsel;

B.      Find that Experian breached its duty to safeguard and protect the PII of Plaintiff and Class Members that was compromised in the Data Breach;

C.      Award Plaintiff and Class Members appropriate relief, including actual and statutory damages, restitution and disgorgement;

D.      Award equitable, injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and other Class Members;

E.      Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

F.      Award pre-judgment and post-judgment interest as prescribed by law; and

G.     Grant additional legal or equitable relief as this Court may find just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 26th day of October, 2015.

**KELLER ROHRBACK L.L.P.**

By  */s/ Matthew J. Preusch*
Matthew J. Preusch (SBN 298144)
mpreusch@kellerrohrback.com
1129 State Street, Suite 8
Santa Barbara, California 93101
Tel: (805) 456-1496, Fax (805) 456-1497

Cari Campen Laufenberg, *pro hac vice forthcoming*
claufenberg@kellerrohrback.com
Gretchen Freeman Cappio, *pro hac vice forthcoming*
gcappio@kellerrohrback.com
Amy N.L. Hanson, *pro hac vice forthcoming*
ahanson@kellerrohrbak.com
1201 Third Ave., Suite 3200
Seattle, Washington 98101
Tel: (206) 623-1900 / Fax: (206) 623-3384

***Attorneys for Plaintiff Martha Schroeder***